Carla RASMUSSEN and
Christian Rasmussen

v.

METROPOLITAN LIFE INSURANCE
COMPANY and Georgia–Pacific
Corporation.

Civ. A. No. 84–3300.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Dec. 23, 1987.

Byron A. Richie, Richie & Richie, Shreveport, La., for plaintiffs.

Caldwell Roberts and Vicki C. Warner, Mayer, Smith & Roberts, Shreveport, La., Joseph Trovato, New York City, for Metropolitan Life Ins. Co.

F. Drake Lee, Cook, Yancy, King & Galloway, Shreveport, La., for Georgia–Pacific Corp.

## MEMORANDUM OPINION

STAGG, Chief Judge.

Carla and Christian Rasmussen (hereinafter "the Rasmussens") have brought this action seeking insurance benefits allegedly due under either a group policy which covered the Rasmussens during Christian Rasmussen's period of employment with Georgia–Pacific Corporation (hereinafter "Georgia–Pacific"), defendant herein, or an individual policy that was issued to Carla Rasmussen by Metropolitan Life Insurance Company (hereinafter "Metropolitan Life"), also a defendant herein, which was issued as a "conversion" policy when Christian Rasmussen's employment ceased. Plaintiffs base their claims for recovery, statutory penalties and attorney's fees under La.Rev.Stat.Ann. 22:657, several equitable theories including detrimental reliance, abuse of rights, *contra bonos mores* and equitable estoppel, and 29 U.S.C. §§ 1132(a)(1)(B) and (g)(1). The case was orally argued by counsel and submitted for disposition on stipulated facts, exhibits and deposition testimony. A motion for summary judgment filed on behalf of Metropolitan Life was referred to the merits.

## STATEMENT OF FACTS

Christian Rasmussen was employed at Georgia–Pacific's plant in Logansport, Louisiana, until he was laid off and the plant closed in December 1983. During his employment, Christian Rasmussen and his wife, Carla, were beneficiaries under the Georgia–Pacific Hourly Employee Welfare Benefit Trust (hereinafter "the Plan"), pursuant to which coverage for hospitalization and medical expenses were provided.

In connection with the Plan, Metropolitan Life served two functions. First, Metropolitan Life acted as the claims administrator. Metropolitan had the duty of reviewing claims and determining whether the expenses claimed were covered. Benefits due Plan claimants were paid directly to the individuals from Georgia–Pacific's trust fund.

Second, Metropolitan Life served as a stop-loss insurer. More specifically, by virtue of an "excess risk agreement" between Georgia–Pacific and Metropolitan Life, the former was liable for medical benefits to its employees up to a specified aggregate amount or "trigger point" after which Metropolitan Life assumed liability. The trigger point was calculated by multiplying a per-employee trigger point factor times the number of employees covered during a given month. The per-employee trigger point factor was periodically negotiated by Metropolitan and Georgia–Pacific. Thus, the Plan was self-insured as between Metropolitan Life and Georgia–Pacific up until a "stop-loss" figure, at which point Metropolitan Life became the insurer.[1]

Under the Plan, coverage automatically terminated when the covered employee's employment with Georgia–Pacific ceased. Thus, under the literal terms of the Plan, coverage for Christian and Carla Rasmussen ended in December of 1983. At that time, Carla Rasmussen was three months pregnant. Prior to this pregnancy, Carla

---

1. The excess risk agreement made it abundantly clear that the liability of Metropolitan Life and Georgia–Pacific to a given claimant was mutually exclusive. During the period of time relevant to this lawsuit, however, Metropolitan Life acted solely in its role as a claims administrator.

Rasmussen had a history of premature births and miscarriages and was advised by her doctor that the current pregnancy was high risk and would possibly result in a premature birth. In an effort to reduce the risk, Carla underwent a surgical procedure known as the "McDonald Cerclage" in November of 1983. Coverage for expenses incurred as a result of this operation was provided by the Plan.

Prior to the closing of the Logansport plant, plaintiffs were informed by Georgia–Pacific that coverage of medical benefits would be available through a choice of three potential conversion policies. Christian Rasmussen requested and received all available information relating to these policies. In a cover letter explaining the conversion policy options was the following statement:

> IMPORTANT
>
> We wish to bring to your attention the fact that the benefits provided under the conversion policies are not as comprehensive as those provided by your former group contract. This is true regardless of which plan you select.

On December 15, 1983, Carla Rasmussen applied, individually, for the conversion option which offered the most benefits. On February 7, 1984, Metropolitan Life issued the conversion policy with an effective date of December 10, 1983, so that coverage would be continuous. In addition to the conversion policy, the Rasmussens unsuccessfully tried to obtain additional insurance from other companies.

In applying for the conversion policy, the Rasmussens were assisted by Ruby Temple, a Georgia–Pacific employee. The application expressly designated the benefits desired.[2] In addition, Ruby Temple wrote, in red ink, "existing maternity benefits requested." The application referred to the policy number under which the Plan was administered. The individual policy that was mailed to Carla Rasmussen made no reference to the notation in red ink, nor did it provide benefits in addition to those described in the information that was sent to the Rasmussens concerning the three conversion options.

Carla Rasmussen gave birth to a premature baby girl, Brandi, on March 8, 1984. On April 11, 1984, the Rasmussens telephoned Metropolitan Life and requested that coverage be added for Brandi. Metropolitan provided the requested coverage without charging a premium for the baby until December of 1984.

Due to the premature birth, the Rasmussens incurred medical bills totaling $108,121 for services rendered to Brandi and $2,773.20 for services provided to Carla Rasmussen. The parties have stipulated that, had the Plan been in effect at the time these expenses were incurred, the Plan— through its administrator, Metropolitan Life—would have paid $107,461 of the bills incurred for Brandi and $2,185.20 of the costs incurred by Carla Rasmussen. Under the conversion policy, Metropolitan Life has thus far paid $6,287.50 on behalf of Brandi and $1,167.50 on behalf of Carla Rasmussen.

## SUMMARY OF ARGUMENTS

Counsel for plaintiffs has summarized plaintiffs' state claims into two legal theories. First, plaintiffs argue that coverage under the Plan vested at the time of conception and could not, therefore, be terminated automatically when Christian Rasmussen's employment ceased. Second, plaintiffs argue that Ruby Temple's notation of "existing maternity benefits requested" became incorporated, upon approval by Metropolitan Life, into the converted policy and had the effect of lifting the maternity benefits out of the Plan into the individual policy. Consequently, plaintiffs seek recovery in this suit for the amounts which would have been paid under the Plan plus double that amount as a statutory penalty and attorney's fees under La.Rev.Stat.Ann. 22:657.

---

2. As indicated, the Rasmussens sought the most comprehensive conversion policy which provided for a daily benefit of $70 with the maximum benefit period of seventy (70) days, a maxium of

$700 for hospital services and a maximum of surgical indemnity of $500. These figures were included on the application for conversion.

Defendants argue, however, that all of plaintiffs' state claims are preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), *see*, 29 U.S.C. § 1001 *et seq.* Since the state claims are preempted by ERISA, defendants assert that the court's inquiry is limited to determining whether denial of the benefits requested was arbitrary and capricious. Alternatively, defendants argue that, under Louisiana law, termination of coverage under a group health plan upon cessation of employment is legal notwithstanding the fact that a pregnancy exists at the time of termination.

In response to defendants' preemption argument, plaintiffs argue that, by virtue of the excess risk agreement, the Plan was insured and, as such, precludes preemption of state law by ERISA. In any event, plaintiffs contend that their state claims regarding coverage under the converted policy cannot be preempted by ERISA since the converted policy is clearly not a "plan" within the meaning of ERISA. Though not all inclusive of the arguments presented, this summary provides the starting point for analyzing the defendants' preemption argument. For reasons stated more fully hereinafter, the court concludes that all of plaintiffs' state claims are preempted by ERISA.

### ANALYSIS OF LAW AND FACTS

The ERISA preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(b) of this title." 29 U.S.C. § 1144(a). Thus, if the employee benefits do not constitute a "plan" within the meaning of ERISA, the preemption inquiry ends. Likewise, if the state law does not "relate to" an ERISA plan, preemption

will not occur. The definition of an ERISA plan is codified in § 1002(1),[3] and was summarized in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982), as follows:

> [A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, ... the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneural businesses, must establish or maintain the plan, fund or program.

The Plan at issue in this case satisfies these prerequisites. The Plan and trust fund was established by Georgia–Pacific for the purpose of providing, *inter alia*, health care benefits to its employees and their dependents. Georgia–Pacific is the source of financing for the fund up to a trigger point. The language contained in the certificate of insurance and the policy itself clearly indicate intended benefits and the procedures for filing a claim. Thus, the Georgia–Pacific Plan falls within the coverage of ERISA.

Plaintiffs argue, nonetheless, that the Plan was insured and, therefore, exempt from ERISA preemption. Plaintiffs' argument is premised upon language contained in *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 746, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985), which was the first Supreme Court decision interpreting the "insurance savings" and "deemer" clauses contained in ERISA. *See*, §§ 1144(b)(2)(A) and 1144(b)(2)(B).[4] In

---

**3.** Unless otherwise indicated, all further references to statutory provisions will be under Title 29 of the United States Code.

**4.** These provisions, insofar as pertinent, provide:

(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from

any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged

*Metropolitan Life*, the Court held that ERISA did not preempt a Massachusetts law which mandated that employers provide a minimum amount of mental health care benefits. The employers and their insurance companies argued, unsuccessfully, that the benefits mandated by the Massachusetts law were impermissible state regulation and, therefore, preempted. The insurance companies further argued that the ERISA savings clause, which expressly exempts state insurance laws from ERISA preemption, should be read narrowly to save only traditional state regulation of insurance. 471 U.S. at 738, 105 S.Ct. at 2388. The Court held that the Massachusetts law mandating minimum mental health care insurance benefits was a state law regulating insurance and, consequently, was within the ERISA insurance savings clause. *Id.* at 739, 105 S.Ct. at 2389. The Court further reasoned that the deemer clause[5] properly constrained the scope of the ERISA savings clause. *Id.* In reaching this conclusion, the Court noted:

> We therefore decline to impose any limitation on the savings clause beyond those Congress imposed in the clause itself and in the 'deemer clause' which modifies it. If a state law 'regulates insurance,' as mandated-benefit laws do, it is not preempted.

\* \* \* \* \* \*

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing, we merely give life to a distinction created by Congress in the 'deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

*Metropolitan Life*, 471 U.S. at 746, 105 S.Ct. at 2393.

Based upon this language, plaintiffs contend that the Georgia–Pacific Plan was insured and, therefore, subject to indirect regulation by the state. More specifically,

plaintiffs argue that the Plan and excess risk agreement constitute nothing more than a "plain vanilla insurance policy with a large deductible." The deductible, plaintiffs contend, was the amount below the trigger point for which Georgia–Pacific was liable. Plaintiffs submit that Metropolitan Life, by virtue of the stop-loss coverage, acted more as an insurance company rather than a claims administrator, since it had a financial stake in the settlement of claims submitted. Plaintiffs further argue that Metropolitan Life insured the individual Plan participants rather than the Plan itself. In support of these arguments, plaintiffs rely upon *Michigan United Food and Commercial Workers Union v. Baerwaldt*, 767 F.2d 308, 312–13 (6th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986); *Simmons v. Prudential Insurance Company of America*, 641 F.Supp. 675, 677 (D.C.Colo.1986); *Bone v. Association Management Services, Inc.*, 632 F.Supp. 493, 495 (S.D.Miss.1986).

In *Baerwaldt, supra*, the Plan at issue paid all health and welfare benefits up to an agreed amount and after that liability limit was reached, the insurer was liable to the individual participants for payment of additional benefits. The Court relied upon the savings clause in concluding that a state law requiring all group disability policies to include a certain amount of coverage regulated insurance and was, therefore, not preempted by ERISA. The court in *Baerwaldt* stated that the stop-loss nature of the Plan did not alter its conclusion. *See also, Simmons v. Prudential Insurance Company of America, supra* (holding that insured employee's state law claims, though initially preempted by ERISA, were nevertheless excepted from preemption by ERISA's savings clause where the stop-loss insurer would be viewed as an insurance company since it provided not only administrative duties but guaranteed coverage for Plan participants above the stop-loss amount); *Bone v. Association Management Services, Inc.*, 632

in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance

contracts, banks, trust companies, or investment companies.

5. *See,* footnote 4, *supra.*

F.Supp. at 495 (distinguishing *Baerwaldt* on the ground that the Plan in that case provided that the stop-loss insurer was liable to individual participants for payment of additional benefits; savings clause didn't save, however, plaintiffs' claims where excess insurer was liable to plan).

Though well briefed and argued, the court finds plaintiffs' arguments unpersuasive. By way of a contract separate from the Plan, the excess risk agreement, Georgia–Pacific sought coverage from Metropolitan Life to insure limited liability. Under the agreement, Metropolitan Life's first duty was to make a final determination of the amount of benefits, if any, to which an employee or dependent would be entitled. Thus, Metropolitan Life's first and primary role was as a claims administrator for the Plan. Yet, Metropolitan Life also agreed to assume liability for Plan benefits beyond a designated trigger point.

It is undisputed that during the period relevant to this lawsuit, September 1, 1983 through December 31, 1984, Metropolitan Life acted solely in its function as claims administrator, using Georgia–Pacific funds to pay medical care benefits. The trigger point was never reached, and Metropolitan Life never paid nor was obligated to pay hospital benefits during this period. At the end of the period, there was an excess of $969,187.90 in the trust account that had been previously deposited by Georgia–Pacific.

Whether plaintiffs' claims for benefits under the Plan would have triggered Metropolitan Life's liability in a given month in 1984 is not only speculative but irrelevant since coverage under the Plan, by its plain terms, terminated in December of 1983. As will be discussed more fully below, plaintiffs' state law claims, under which it is argued that the Plan's coverage should have extended into 1984, are preempted by ERISA. To conclude that Metropolitan Life is an insurance company in the case at bar, for purposes of indirect state regulation, would frustrate administration of the Plan since Georgia–Pacific's apparent purpose in utilizing this particular scheme was to rely on an insurance company's expertise in processing claims. The court's conclusion is amply supported by case law.

In a case strikingly similar to the one at bar, *Light v. Blue Cross and Blue Shield of Alabama, Inc.*, 790 F.2d 1247 (5th Cir. 1986), South Central Bell self-insured a plan for which Blue Cross–Blue Shield adjudicated claims and paid benefits. South Central Bell laid off Mr. Light at a time when his wife, a covered dependent, was pregnant. Plaintiffs sued, alleging *inter alia*, bad faith refusal to pay benefits and breach of fiduciary duties. In contending that ERISA preemption was inapplicable, plaintiffs argued that their action was one against the plan administrator and, therefore, did not relate to an employee benefit plan under § 1144(a). In rejecting this argument, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of Blue Cross–Blue Shield which held that the state claims did relate to an employee benefit and would therefore be preempted. Id. at 1249. Since Metropolitan Life acted solely in its role as claims administrator with respect to the Rasmussens' claim under the Plan, the court finds *Light* to be analytically indistinguishable. *See also, Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564–65 and n. 2 (11th Cir.1987) (state claims for bad faith refusal to pay benefits and intentional infliction of emotional distress were preempted by ERISA in action against the plan's claims administrator since an insurance company acting in this capacity for a self-funded plan is not acting as an insurance agent and allowance of state claims against it "would upset the uniform regulation of plan benefits intended by Congress"); *Moore v. Provident Life & Accident Insurance Company*, 786 F.2d 922, 926–27 (9th Cir.1986) (savings clause not applicable to former employee's state claims for recovery of benefits and punitive damages against an insurance company from which an employee benefit plan purchased stop-loss insurance since the insurance company's role in relation to the benefit plan insofar as plaintiff's claims were involved was merely as an administrative overseer since the stop-loss coverage did not go into effect); *Tumulty v. Aetna Life Insurance Company*, 659 F.Supp. 70, 72–

73 (S.D.Fla.1987) (ERISA preempted state claims against insurance company that acted as claims administrator for self-funded employee benefit plan); *Cuttle v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154, 1157 (D.Me.1985) (employee benefit plan would not be "deemed" an insurance company despite fact that the plan at issue carried stop-loss insurance which the court defined as "insurance obtained to protect self-insurers from risks beyond those upon which the premiums are based"); *Hutchinson v. Benton Casing Service, Inc.*, 619 F.Supp. 831, 836–39 (S.D. Miss.1985) (employee benefit plan was not an insurance company within the meaning of ERISA's deemer clause where it was primarily a self-funded, self-insured trust established under an employee benefit plan even though there was a stop-loss policy protecting the trust from catastrophic loss).

Though the court is convinced that the Georgia–Pacific Plan was self-insured for purposes of ERISA's preemption, savings and deemer clauses, the necessity of the insured/uninsured distinction has been cast in serious doubt by the Supreme Court's recent decision in *Pilot Life Insurance Company v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).[6] In *Dedeaux*, plaintiff's employer, Entex, Inc. ("Entex"), had a long-term disability employee benefit plan which it established by purchasing a group insurance policy from Pilot Life Insurance Company ("Pilot Life"). Entex collected and matched its employees' contributions to the plan and forwarded the funds to Pilot Life. Completed claim forms were forwarded to Pilot Life, which bore the responsibility of determining who would receive disability benefits. In addressing the distinction made in *Metropolitan Life Insurance Company v. Massachusetts, supra*, the Court stated:

> *Metropolitan Life*, however, did not involve a state law that conflicted with a substantive provision of ERISA. There-

fore the court's general observation— that state laws related to ERISA may also fall under the savings clause—was not focused on any particular relationship or conflict between a substantive provision of ERISA and a state law. In particular, the court had no occasion to consider in *Metropolitan Life* the question raised in the present case: whether Congress might clearly express, through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision displace state causes of action.

107 S.Ct. at 1558.

The court conducted a review of the legislative history behind ERISA to determine whether Congress intended the civil enforcement provisions contained in § 502(a) of ERISA, 29 U.S.C. § 1132(a), were meant to be the exclusive means for actions by ERISA plan participants and beneficiaries. The court in *Dedeaux* agreed with the Solicitor General's interpretation of ERISA that the civil enforcement provisions were meant to "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." 107 S.Ct. at 1555. The Court further held:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provides strong evidence that Congress did *not* intend to authorize other

**6.** The plaintiff in *Dedeaux* sought permanent disability benefits for injuries sustained following a work-related accident. The insurance company provided full benefits for two years after the accident and then sporadically terminated and reinstated the benefits several times during the next three years. *Dedeaux* alleged

tortious breach of contract, breach of fiduciary duties and fraud in the inducement. Relying primarily on the clear expression of Congressional intent that ERISA's civil enforcement scheme be exclusive, the Supreme Court held that these state law claims were preempted. 107 S.Ct. at 1558.

remedies that it simply forgot to incorporate expressly.'

107 S.Ct. at 1556, quoting from *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (emphasis in original).

■ Thus, the holding in *Dedeaux* seems to render unnecessary—at least under the facts of this case—a determination of whether the Plan is insured. Specifically, the analysis mandated by *Dedeaux* requires the court to determine (1) whether the Plan falls within the definition of an ERISA plan; (2) whether the state law "relates to" a benefit plan and, finally, (3) whether the state cause of action being asserted conflicts with a substantive provision of ERISA. In the event that these three questions are answered in the affirmative, the state cause of action would be preempted by ERISA since the Court in *Dedeaux* held that ERISA's civil enforcement provisions totally displace state causes of action. Under this method of analysis, plaintiffs' state claims are preempted.

As discussed at the outset of this opinion, the Georgia–Pacific Plan falls within the meaning of ERISA. Moreover, it has not been disputed that the state claims relate to the employee benefit plan within the meaning of § 1144(a). Thus, the only remaining issue is whether plaintiffs' state claims conflict with a substantive provision of ERISA.

■ Plaintiffs' first theory under Louisiana law is that coverage under the Georgia–Pacific Plan vested at the time of conception and that the subsequent termination of the insurance policy did not eliminate the existing coverage.[7] The cases relied upon by plaintiffs have the effect of placing a duty upon an insurer, under certain limited circumstances, to continue coverage even when the policy has been cancelled in accordance with its literal terms.

In addition, plaintiffs seek recovery of benefits and a penalty of double that sum and attorney's fees, alleging improper and unreasonable processing of claims, in violation of La.Rev.Stat.Ann. 22:657. The Supreme Court's holding in *Dedeaux* makes it abundantly clear that state claims challenging the processing of a claim for benefits under an ERISA regulated plan are preempted. 107 S.Ct. at 1558; *see also, Howard v. Parisian, Inc.,* 807 F.2d at 1564 (holding that state law claims arising out of the administration of benefits under a plan and claims which challenge denial of benefits are totally preempted by ERISA).

The court concludes that plaintiffs' claims under *Cataldie, supra* at note 7, and its progeny are in direct conflict with §§ 1104 (fiduciary duties), 1109 (liability of breach of fiduciary duties) and the civil enforcement provisions under which a participant or beneficiary may bring a civil action to recover benefits due him under the terms of his plan or for appropriate relief for violation of § 1109. *See,* § 1132(a)(1)(B) and (a)(2). In *Cataldie,* the seminal case upon which plaintiffs rely, the Louisiana Supreme Court held that benefits due under a non-group health and accident insurance policy may not be reduced once a covered illness begins, even if the policy terminates by agreement with the insured. The facts of *Cataldie,* however, presented an egregious scenario. The beneficiary was Cataldie's three-year-old daughter who was diagnosed as having brain cancer. Subsequent to this diagnosis, the insurer decreased major medical coverage by 92 per cent, while increasing the deductible 5,000 per cent, and the quarterly premium over 250 per cent! The court concluded that Cataldie was forced by the insurer's last increase in premiums to agree to a cancellation of his policy.

Relying upon La.Rev.Stat.Ann. 22:213(B)(7),[8] the court concluded that the

---

7. In support of this proposition, plaintiffs rely upon *Cataldie v. Louisiana Health Service and Indemnity Company,* 456 So.2d 1373 (La.1984); *Cabibi v. Louisiana Health Service and Indemnity Company,* 465 So.2d 56 (La.App. 4th Cir. 1985); and *Breland v. Louisiana Hospital Servic-*

*es, Inc.,* 468 So.2d 1215 (La.App. 1st Cir.1984); *see also, DiPascal v. New York Life Insurance Company,* 749 F.2d 255 (5th Cir.1985).

8. This provision, insofar as relevant, provides:

insurance company was required to continue coverage beyond termination. In so holding, the Court noted that the history of the statutory measure relied upon was intended "to serve as a safeguard against an unconscionable cancellation of health insurance policies by an insurer after the occurrence of illness or injury but before the loss had fully accrued." 456 So.2d at 1376 (citation omitted).

The holding in *Cataldie*, therefore, has the effect of imposing an additional responsibility, in the nature of a fiduciary duty, upon an insurer. It also provides a cause of action for recovery of benefits not otherwise available. Consequently, plaintiffs' state claims based upon the holding in *Cataldie* and its progeny are in conflict with the ERISA provisions, noted above, which regulate fiduciary duties and provide a civil action for violation thereof, as well as an action for recovery of benefits due. As one scholar has noted, "ERISA fiduciary duties are very comprehensive, meticulously applied, broadly interpreted, and are sweeping both in the scope of fiduciary liability and in the nature of prohibited transactions."[9] To allow a cause of action based upon a duty not required by ERISA not only would be in conflict with substantive provisions of ERISA as noted in *Dedeaux*, but would also conflict with Congress's intention that the regulation of employee benefit plans be exclusively a federal concern. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).[10] This conclusion is consistent with the pre-*Dedeaux* opinion by the Fifth Circuit in *Light v. Blue Cross and Blue Shield of Alabama, Inc., supra.*

■ Finally, plaintiffs' claim under state law for attorney's fees is in conflict with and must be preempted by § 502(g) of ERISA under which the court in its discretion may allow an award of attorney's fees to either party. *See,* § 1132(g) and *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255, 1256 (5th Cir.1980) (setting forth the appropriate standard for awarding attorney's fees under ERISA).

■ Plaintiffs' state claims, based upon Ruby Temple's notation in red ink "existing maternity benefits requested" that appeared on the application for the converted policy are worthy of additional consideration. The Rasmussens contend that even if ERISA preempts their state claims regarding the Georgia–Pacific Plan, ERISA has no preemptive effect concerning their state claims based upon the converted individual policy. Clearly, the individual policy does not constitute a "plan" within the meaning of ERISA. The relief sought by the Ras-

The insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown on the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. It is disputed, however, whether this provision and the reasoning in *Cataldie* applies with equal force to a group employee benefit plan. *See,* La.Rev.Stat.Ann. 22:221; *compare DiPascal v. New York Life Insurance Company*, 749 F.2d at 259 *with Breland v. Louisiana Hospital Services, Inc.*, 468 So.2d 1215, 1217 (La.App. 1st Cir.1984).

9. Gregory, *The Scope of ERISA Preemption of State Law: A Study in Effective Federalism*, 48 U.Pitt.L.Rev. 427, 446 n. 64 (1987); *see also,* Little and Thrailkill, *Fiduciary Duties Under ERISA: A Narrow Path to Tread*, 30 Vand.L.Rev. 1 (1977).

10. Despite the scholarly effect by plaintiffs' counsel for a good faith extension of *Cataldie,* the court would reject the theory even absent ERISA preemption. In two post-*Cataldie* decisions, a Louisiana state intermediate court of appeal dealt with facts remarkably similar to those in the case at bar. *Trevino v. Prudential Ins. Co.*, 504 So.2d 1179 (La.App. 3d Cir.), *writ denied*, 506 So.2d 1230 (La.1987); *Harrington v. Prudential Ins. Co.*, 477 So. 1272 (La.App. 3d Cir.1985). Both cases involved employees and their dependents who were covered under a group health insurance policy in connection with the employee's job. Both policies expressly provided that coverage would cease upon termination of employment. At the time Messrs. Trevino and Harrington's employment ended, their wives were approximately three months pregnant. In both cases, *Cataldie* was distinguished and the insurer's refusal to pay for expenses incurred after termination of employment was held not to be in contravention of the Louisiana Insurance Code. Convinced that *Cataldie* does not require a result different from that reached in *Trevino* and *Harrington,* this court would be *Erie* bound to follow these holdings. *West v. AT & T,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

mussens in connection with their claims on the individual policy, however, is the coverage that was provided under the group Plan.

Stated summarily, plaintiffs contend that under Louisiana law, the physical attachment of the application, with the notation in red ink, to the insurance contract had the effect of incorporating into that converted individual policy the coverage provided by the employee health benefit Plan.[11] The issue presented is whether the Rasmussens' state claims seeking recovery under the converted individual policy of the benefits contained in the employee health benefit plan are preempted by ERISA. For reasons stated more fully hereinafter, the court concludes that ERISA preempts all of plaintiffs' state claims.

The Georgia–Pacific Plan provided each employee and qualified dependent with the privilege of obtaining an individual policy of hospital expense and surgical operation insurance if group coverage ceased due to termination of employment.[12] The particular conversion plans that were made available were selected and changed periodically by Georgia–Pacific. Thus, plaintiffs' right to the converted policy as well as a designation of benefits to be contained therein existed solely by virtue of an ERISA employee health benefit plan.

The completion and processing of the application containing Ruby Temple's red ink notation arose in connection with a

provision contained in an ERISA-covered plan. *See, supra,* footnote 12. To accept the Rasmussens' interpretation, based upon state law, would have the effect of allowing an informal amendment to an ERISA plan that would considerably increase coverage under a converted policy (previously selected by the Plan's sponsor) without formal negotiations or a corresponding increase in premiums. Clearly, this result is inconsistent with the policy and express language of ERISA. *See, generally,* § 1102(b)(3) (requiring a procedure for amending ERISA plans and for identifying the persons who have authority to amend); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) ("By explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan"); *Johnson v. Central States, Southeast and Southwest Areas Pension Funds,* 513 F.2d 1173, 1174–75 (10th Cir. 1975) (no amendment by virtue of an informational booklet and letter with terms inconsistent with provisions of written pension plan).

Based upon this fact, and the Supreme Court's holding in *Dedeaux* emphasizing Congress's intent to totally preempt the field of private employee health benefits plans by ERISA,[13] the court holds that plaintiffs' claims based upon the converted policy are also subject to ERISA's preemp-

---

**11.** In support of this theory, plaintiffs rely on La.Rev.Stat.Ann. 22:654, 22:628, 22:618 and 22:219. Defendants urge that these provisions were intended to protect people in the false representation and warranty claims between insurers and insureds and not, as plaintiffs argue, for the purpose of amending a proposed policy. *Spain v. Travelers Insurance Company,* 332 So. 2d 827 (La.1976).

**12.** The policy provision stated, in relevant part: PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF INSURANCE
In the event of
(a) the cessation of the Employee's Major Medical Expense Insurance under the Group Policy because of termination of his employment, ...
an individual policy of Hospital Expense Insurance or Hospital Expense and Surgical Operation Insurance, without evidence of insura-

bility, may be obtained from the Insurance Company upon written application and payment of the appropriate premium to the Insurance Company within thirty-one days after such cessation of insurance, subject to the provisions of the Group Policy. Information concerning such individual policies will be furnished by the Employer upon request.

**13.** *See, Dedeaux,* 107 S.Ct. at 1552; *see also, Metropolitan Life Insurance Company v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that the preemptive force of ERISA is so powerful as to displace entirely any state cause of action for purposes of a federal court's removal jurisdiction) and Gregory, *The Scope of ERISA Preemption of State Law, supra,* at 454–58 (discussing the legislative history and congressional intent of ERISA as revealed by comments made by the Act's major sponsors, Senators Jacob Javits and Harrison Williams and Representative John Dent).

tion provision. Accordingly, plaintiffs' remedies are limited solely to ERISA's civil enforcement provisions.

■ The only remaining issue, therefore, is whether plaintiffs are entitled to any relief under §§ 1132(a)(1)(B) and (g)(1). In this respect, the court is presented with a dilemma. Judicial review under ERISA is limited to a determination whether the denial of benefits by the administrator or trustees was arbitrary and capricious. *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.1985). Review under this standard, however, contemplates the existence of an administrative record formed after a full and fair review by the appropriate named fiduciary during which the fiduciary considered the Plan beneficiaries' arguments. *Id.; see also,* 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1.

A booklet explaining coverage under the Plan indicates that a procedure for review was available. Yet, the record before the court is silent as to whether this review occurred. The stipulated facts only reveal that all of the plaintiffs' medical bills were submitted to Metropolitan Life for payment and that only a portion of the bills were paid. Whether plaintiffs' arguments presently presented to the court were ever submitted for review under the Plan is a fact not established by the record. Consequently, the court is unable to proceed with review under the arbitrary and capricious standard since there is no record of defendants' actions from which a review can be conducted.

In an effort to remedy this situation, the court will leave the record open for fifteen (15) days within which time the parties are invited to supplement the record, either with evidence demonstrating that exhaustion occurred [14] or authority why the requirement should be waived and upon what basis the court can proceed to conduct a review.

---

14. In the amended pretrial order, defendants contended that plaintiffs failed to exhaust the administrative remedies under ERISA. The plaintiffs responded by denying this contention; yet, in the proposed findings of fact and conclusions of law, plaintiffs requested remand to the

An order consistent with the terms of this opinion shall issue herewith.

### ORDER

For the reasons enunciated in the foregoing memorandum opinion,

IT IS ORDERED that all of the state claims asserted by the Rasmussens are preempted by ERISA;

IT IS FURTHER ORDERED that the parties be afforded fifteen (15) days within which to submit additional evidence demonstrating exhaustion of administrative remedies or authority as to why this requirement should be waived, and upon what basis the court can proceed in order to conduct a review.

plan fiduciary for exhaustion of administrative remedies in the event that the court concluded that plaintiffs' claims are preempted by ERISA. Thus, the positions of the parties with respect to this issue is somewhat in dispute.