24 So.2d 65

STATE v. BICKHAM.

No. 37899.

Nov. 5, 1945.

Ponder & Ponder, of Amite, and Leonard E. Yokum, of Hammond, for relators.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Joseph A. Simms, Asst. Dist. Atty., of Hammond, for respondent.

HAWTHORNE, Justice.

David Bickham, charged in two affidavits with the crime of cruelty to animals, was tried in the city court of Hammond, found guilty, and sentenced in each case to pay a fine of $100 and serve 60 days in jail, and in default of the payment of the fines to serve an additional 30 days,

the sentences not to run concurrently. From these convictions and sentences he appealed to the Twenty-first Judicial District Court, Parish of Tangipahoa, and that court, after trial, affirmed the judgments appealed from.

Relator applied to this court for writs of certiorari, prohibition, and mandamus. We issued a writ of certiorari with a stay order, and the matter is now before us for review.

During the trial in the district court, relator reserved four bills of exception, upon which he relies for a reversal of the convictions and sentences.

### Bill of Exception No. 1.

Relator, David Bickham, was charged in two affidavits, in No. 17,817 on the docket of the city court of Hammond with cruelty to animals by poisoning cows and in No. 17,818 with cruelty to animals by shooting a cow, which affidavits were filed on March 12, 1945. Relator, represented by counsel, was placed on trial on each of these affidavits on March 19, 1945, the cases being consolidated for the purpose of trial, with separate verdicts to be rendered. On March 23, he was sentenced on each count, as hereinabove set forth. From these convictions and sentences he appealed to the district court.

According to the per curiam of the district judge to this bill, relator was arraigned in that court on each count on April 9, 1945 (pleading not guilty to each charge), and the cases were set for trial on April 20, on which date the cases were continued to April 27. On this date counsel for relator made verbal motion in open court for a continuance, and court recessed to permit them to prepare a written motion. After a delay of one hour, counsel for accused then came into court and asked leave to withdraw the plea of not guilty on each charge for the purpose of filing a motion to quash. The district court refused to permit the withdrawal of the plea of not guilty and the filing of the motion to quash, whereupon this bill was reserved.

Counsel for relator contend that the trial judge erred in his refusal to permit them to withdraw the plea of not guilty and in not allowing the filing of the motion to quash in each case, for the reason that the trial in the district court must be had de novo, and that defendant was entitled to have the motion filed and passed upon, and that this was not a matter in which the district court could exercise its discretion. In support of this contention they cite Article VII, Section 36, of the Louisiana Constitution of 1921, and the cases of Town of Rayville v. Mann, 136 La. 237, 66 So. 956; City of Shreveport v. Rambo, 169 La. 582, 125 So. 625; City of Minden v. Harris, 196 La. 1021, 200 So. 449, and State ex rel. Town of Jennings v. Miller, 109 La. 704, 33 So. 739.

This constitutional provision and the cases cited are authority for the legal proposition that, on appeal by persons sentenced by mayors, recorders, or municipal courts to a fine or imprisonment, the trial of the case shall be de novo in the district court.

"A trial de novo means a trial anew in the appellate tribunal, according to the

usual or prescribed mode of procedure in other cases, involving similar questions, whether of law or fact." 3 Cyc. 260.

■ "On a new trial in the appellate court the whole case is open for judicial inspection. All questions may be presented which legitimately arise on the record, whether urged or relied on in the lower court or not." Ibid., p. 262; see also 42 Words and Phrases, Perm.Ed., 524.

■ In such appeals, the case is tried de novo in the district court, that is, as in a court of original jurisdiction. However, we do not think that the constitutional provision and the cited cases are applicable to the facts in these cases.

The sole question presented by this bill is whether or not the trial judge abused his discretion under the facts in these cases by his refusal to permit relator to withdraw his plea of not guilty for the purpose of filing the motion to quash.

Article 265 of the Code of Criminal Procedure reads as follows: "The defendant may at any time, with the consent of the court, withdraw his plea of not guilty and then set up some other plea or demur or move to quash the indictment."

As pointed out hereinabove, relator in these cases was represented by counsel both in the city court and in the district court, and it goes without saying that they were entirely familiar with the charges contained in the affidavits which were filed in the city court on March 12, as he was represented by counsel at the trial in that court on March 19.

On April 9, after the appeal was lodged in the district court, the cases were fixed for trial for April 20, on which date, according to the brief filed by relator, the cases were continued at his request and refixed for April 27. Upon being called at this time, relator verbally requested a further continuance, and the trial judge recessed court so that counsel could prepare a written motion to this effect. After an hour's delay, counsel for relator came into court and asked leave to withdraw the plea of not guilty in each charge for the purpose of filing the motion to quash.

This court, in the case of State v. Foster, 150 La. 971, 91 So. 411, 413, in discussing the refusal of the trial judge to permit the withdrawal of a plea of not guilty so as to afford defendant opportunity to file a motion to quash, said: "The withdrawal of the plea for such a purpose rests within the discretion of the trial judge, and the exercise of that discretion will not be interfered with save where it has been clearly abused. State v. Gregg, 123 La. 610, 49 So. 211; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Sandiford, [149 La. 933], 90 So. 261."

■■ Counsel in brief do not point out to us in what particular way the trial judge abused his discretion, but contend only, that, since the trial was de novo, defendant was entitled to have the motion filed and passed upon, and that the trial court was without any discretion in the matter. With this contention we cannot agree, and we do not think the trial judge here abused his discretion.

## Bill of Exception No. 2.

After the refusal of the trial judge to permit the withdrawal of the plea of not guilty so as to afford relator an opportunity of filing the motion to quash, relator then filed a motion for a continuance, alleging that three of his material witnesses were not present in court, and that he had been deprived of compulsory process for securing the attendance of said witnesses at the trial. The State admitted that, if said witnesses were present, they would testify as set out in the motion, but not that such testimony would be true. The trial judge overruled the motion for a continuance and ordered the trial to proceed, whereupon relator reserved this bill.

The ruling of the trial judge was correct provided that relator had had the benefit of compulsory process for securing the attendance of the absent witnesses, and this is the only question presented by this bill.

Article I, Section 9, of the Louisiana Constitution of 1921, provides that: "* * * The accused in every instance shall have the right to be confronted with the witnesses against him; he shall have the right to defend himself, to have the assistance of counsel, *and to have compulsory process for obtaining witnesses in his favor.*" (Italics here and elsewhere are ours.)

Pursuant to this mandate of the Constitution, the Legislature, in adopting the Code of Criminal Procedure, incorporated therein Article 325, which reads as follows: "In all criminal cases, whenever either the district attorney or the defendant asks for a continuance on the ground of the absence of a material witness, the other shall be entitled to an immediate trial on admitting that, if said witness were present, he would testify as stated in the affidavits made for a continuance, but in no case shall either the State or the defendant be required, in order to obtain a trial, to admit that the statements made in the affidavit for a continuance are true; *provided that in no event shall any defendant be forced to trial until he shall have had the benefit of compulsory process for securing the attendance of his witnesses.*"

Compulsory process is defined in Article 145 of the Code of Criminal Procedure as follows: "The right to compulsory process is a right to demand subpoenas for the witnesses and a right to have those subpoenas served."

Article 149 of the Code of Criminal Procedure provides that:

"An officer charged with the service of any subpoena shall make return thereof into the court out of which same shall have issued.

"If the service has been personal, the return shall so state; if not personal, the return shall show where the service was made and in whose hands the subpoena was left. *If the return be that the witness can not be found, the officer must set out in his return every fact which, in his opinion, justifies the return.*"

We find in the record the subpoenas to each of the absent witnesses, Mamie Rob-

inson, Fannie Elliot, and Nelta Lloyd, together with the deputy sheriff's return on each. After a careful examination of these subpoenas, we think there is merit in the relator's contention that he was deprived of the benefit of compulsory process for securing the attendance of the witness Mamie Robinson. This being so, it is not necessary for us to comment on, or discuss, the other two subpoenas. We quote in full the deputy sheriff's return on the subpoena to Mamie Robinson:

"After diligent search and inquiry I re-·ceived information from Dave Bickham and Earl Austin that Mamie Robinson was not home, and I was unable to find her.

"I make this my return this 27th. day of April, 1945.

(Signed)   "F. B. Cowen

"Dy. Sheriff Tangipahoa Parish, La."

In the case of State v. Boitreaux, 31 La. Ann. 188, this court, in discussing the duty of the sheriff or his deputy with reference to their returns on subpoenas or attachment for witnesses, said: "* * * their return must show what steps they have taken, what inquiries they have made, from whom and where those inquiries were made, to find the prisoner's witnesses. It is not for them to *pronounce* that the witnesses cannot be found, they must state every fact which, in their opinion, justifies their belief. This done, and the return presented, the judge then decides whether there has been, on the part of that officer, that diligent search without which the prisoner might be deprived of a constitutional privilege, and his life and liberty arbitrarily imperiled."

From an examination of the deputy sheriff's return, quoted hereinabove, it is readily seen that the return does not show the date on which the subpoena was received by the sheriff's office or one of his deputies, or the date on which the deputy attempted to serve it on the witness Mamie Robinson. Furthermore, this return does not show whether the deputy went to the home of the witness or what efforts he made, if any, after being told by two persons that she was not at home, to learn when she would return to her home or where she could be found.

This return indicates to us that the deputy sheriff accepted the statement of the two individuals named in the return that the witness was not at home, and apparently made no further effort to serve the subpoena. And it is entirely possible, so far as this return shows, that the witness may have been within the jurisdiction of the court on the day of the trial and could have been served and called to testify. It is true that the return uses the words "diligent search and inquiry", but these are mere conclusions, for the circumstances and facts constituting due diligence have not been recited therein.

The framers of the Code of Criminal Procedure, in adopting Article 325 thereof, incorporated in that article all the provisions found in Act 84 of 1894 and added thereto the provision "* * * provided that in no event shall any defendant be forced to trial until he shall have had benefit of compulsory process in securing the attendance of his witnesses."

In State v. Owens, 167 La. 1016, 120 So. 631, 632, in discussing Act 84 of 1894, we said: "And it is the settled jurisprudence of the state that the admission by the prosecution, under the provisions of Act 84 of 1894, that the absent witness, if present, will testify as alleged in defendant's motion for continuance, where the sheriff has not made an earnest effort to secure the attendance of the witness, will not justify a refusal of the continuance, as such a construction of the objects and purposes of the statute would operate as a nullification of the constitutional right of an accused to have compulsory process for the attendance of his witnesses. State v. Anderson, 142 La. 553, 77 So. 279, and authorities therein cited."

In that case we quoted with approval the following extract from State v. Adams, 40 La.Ann. 745, 5 So. 30: "The constitutional * * * right to compulsory process for the attendance of his witnesses, is not to be trifled with. It is not a dead letter, and must be enforced."

The relator here had a constitutional right to have the subpoena served, that is, the right to compulsory process, unless the witness could not be found, and in that event the return should have affirmatively shown every fact which, in the deputy's opinion, justified such a return. In our opinion, the return in this case does not make such a showing, and this being so, the refusal of the trial judge to grant the motion for a continuance is reversible error.

Bills of Exception Nos. 3 and 4.

These bills were reserved to the introduction in evidence, over relator's objection, of arsenic and a shotgun. Since we find it necessary to remand the cases to the district court for a new trial, we see no reason for discussing these bills.

For the reasons assigned, the judgments of the Twenty-first Judicial District Court, affirming the convictions herein, are reversed and set aside, and it is now ordered that these cases be remanded to the district court for a new trial.