390 So.2d 874 (1980)
STATE of Louisiana
v.
Calvin MILLS.
No. 67366.
Supreme Court of Louisiana.
November 10, 1980.
Miriam G. Waltzer, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Terry Q. Alarcon, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
Alexander Ash, relator herein, complains of a judgment decreeing forfeiture of an appearance bond and of the trial court's refusal to rescind the forfeiture.
*875 On September 12, 1975, relator and his girlfriend, Hilda Mills, signed a $5,000.00 property bond for the criminal court appearance of Hilda's brother, Calvin Mills, who had been charged with possession of heroin with intent to distribute in violation of R.S. 40:966. The property owned by relator[1] at 1532 Gen. Ogden, New Orleans, was security for the bond. Subsequent to the posting of the bond and prior to October 7, 1976, Calvin Mills appeared in court on numerous occasions. On October 7, 1976, Mills failed to appear for trial. He did however again appear in court on several occasions following that date and on October 26, 1977, the district attorney nolle prosequied the charge. On September 16, 1979, Mills was killed.
Defendant's failure to appear in court for trial on October 7, 1976, prompted the scheduling of another trial date for October 18, 1976, and an attempt to serve sureties relative to appearance on that date. On that date, neither defendant nor relator was present and judgment was rendered ordering the bond forfeited.
Ash later learned of the inscription of bond forfeiture on his property and inquired about it. This inquiry prompted a demand upon him to pay the judgment. Ash secured counsel and filed a motion to set aside the judgment of bond forfeiture. The trial judge denied the motion and relator applied to this Court for review.
On the appearance bond, Calvin Mills gave his address as 3324 S. Robertson Street, New Orleans. This same address appears on the coroner's death certificate four years later. Sureties Alexander Ash and Hilda Mills gave, as their address, the Gen. Ogden address of the property securing the bond.
The chronology of the scheduled court appearances as shown by the minutes is as follows:
Sept. 11, 1975-Defendant in court. Hearing for attorney set for Sept. 19, 1975.
Sept. 19, 1975-Defendant in court. Continued until Sept. 24, 1975.
Sept. 24, 1975-Defendant in court. Trial set for Nov. 26, 1975.
Nov. 26, 1975-Trial continued until Dec. 17, 1975.
Dec. 17, 1975-Trial continued until Jan. 12, 1976.
Jan. 12, 1976-Case transferred from Section "D" to Section "B".
June 24, 1976-Trial continued by agreement until July 21, 1976.
July 21, 1976-Trial continued by the court to July 28, 1976, due to jury trial in another case.
July 28, 1976-Trial continued by the court due to jury trial in another case. To be reset.
The next minute entry is for October 7, 1976, and shows that defendant did not appear for trial.[2] On September 30, 1976, a subpoena had issued for Calvin Mills ordering him to appear for trial on that date, October 7th. The back of this subpoena contains the notations: "This is projects", "Name not on reg", "No info from neighbors", and "Need more info". The "Return on Domiciliary Service" portion of the subpoena is signed and states that it was received by the deputy sheriff on October 5, *876 1976. The remainder of the blanks are empty. The "neighbors" who had no information about Calvin Mills are not listed. The record contains no indication that a subpoena was issued to the sureties for October 7, 1976.
Following defendant's failure to appear in court on October 7th, subpoena was issued to both sureties to inform them that defendant had not appeared on October 7, 1976, and that trial was reset for October 18, 1976. The subpoena contains the warning "The failure of said defendant to appear on said latter date will result in the forfeiture of your Bond, without further notice and according to law." Service thereof, upon sureties, apparently was attempted on October 11, 1976. The reverse on this subpoena carries the notation: "Mrs. Hogan who lives at 1532 Gen. Ogden St. said Alexander Ash does not live there." A notation on the "Return on Domiciliary Service" portion of the form states "Not live there." The record does not contain a subpoena addressed to Calvin Mills for the October 18, 1976, court appearance.
Defendant, needless to say, failed to appear on October 18th. Sureties also apparently made no appearance through counsel or otherwise on October 18th. (The subpoena itself only relates that defendant is being directed to appear, not sureties.) The state moved that bond be forfeited. The trial court granted the motion. Copies of this judgment were sent to the sureties by certified mail. These letters were returned to the clerk of court marked "Moved, left no address".
Relator argues that the lack of notice makes the judgment of bond forfeiture void ab initio. Notice and opportunity to be heard are essential elements of procedural due process. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Both the federal and Louisiana constitutions guarantee that one may not be deprived of property without due process of law.
Louisiana Revised Statutes 15:85 A(1), the law applicable to bond forfeiture, reads:
"A. All bonds taken to secure the appearance of any person before any district court, except at a preliminary examination, shall be forfeited and collected as follows:
(1) If at the time fixed for appearance such person fails to appear and answer when called, the judge, on motion of the district attorney, upon hearing of proper evidence including service or attempted service upon the defendant and service upon the surety, shall forthwith enter a judgment decreeing the forfeiture of the bond and against such person and his sureties in solido for the full amount thereof. After entering the fact of such failure to appear in the court minutes, the clerk of court shall promptly mail notice of the forfeiture to the surety on the bond whose address is on the face thereof and shall execute an affidavit of the mailing and place it in the record. A copy of the notice shall also be mailed to the agent of the surety who posted the bond. Mailing the notice to the agent alone shall not constitute compliance with this Section. Failure to mail the proper notice within sixty days after the entry of the forfeiture shall release the surety from all obligations under the bond." (Emphasis provided.)
The pertinent inquiry is whether the trial judge, before ordering the forfeiture, heard "proper evidence including service or attempted service upon the defendant and service upon the surety." Regarding the service or attempted service of the October 7th subpoena upon the defendant, the record clearly shows that defendant was not in fact served. The notation on the back of the subpoena does not clearly establish that the sheriff attempted service at the 3324 S. Robertson Street address, defendant's given address, whereat he had presumably been served prior notices. The notation does show that the sheriff went to the office of the housing project in which 3324 S. Robertson Street is apparently located. It also indicates that the sheriff spoke with some people in that area who did not know defendant, but the names and addresses of these people are not included in the information. *877 Neither is the date of such attempt included in the sheriff's notation.
The serving officer is to make a return showing the date and manner in which service was made. R.S. 15:30; C.Cr.P. art. 736. Article 736 further states that when the person cannot be found, the sheriff must set out in his return every fact that in his opinion justifies the return. Although the article is specifically addressed to the subpoenaing of witnesses, the same diligence must be exerted to serve a defendant with notice of his trial.
In State v. Mizell, 341 So.2d 385, 388 (La.1976), we said:
"A return on a subpoena must show what steps have been taken to find an accused's witnesses, what inquiries have been made, from whom, and where those inquiries were made. It is not enough that an officer assert that a witness cannot be found; he must state every fact which justifies this conclusion on his part. This done, the essential question is whether there has been on the part of the officer that diligent search without which the accused might be deprived of the right of compulsory process. State v. Scott, 110 La. 369, 34 So. 479 (1903). We have held that a sheriff in serving a subpoena may not rely on the account of others that a witness is not home or out of the jurisdiction without making further inquiry as to where the witness might be found or when he might return. State v. Bickham [208 La. 1026, 24 So.2d 65 (1945)] supra; State v. Owens [167 La. 1016, 120 So. 631 (1929)] supra."
From the record, it is equally clear that the sureties were not in fact served. The state suggests that attempted service is sufficient in light of the provision of C.Cr.P. art. 328 that the surety's address shall be conclusively presumed to continue for all proceedings on the bond until he files in the court a written declaration changing the address.[3] We pretermit a decision on this issue at the present time because our resolution of this case in its present posture does not require such. However, we do observe that a literal application of R.S. 15:85 A(1) would preclude a judgment of bond forfeiture whenever the surety is not in fact served. Arguably such a result may not have been intended by the legislature in light of the unamended presence of C.Cr.P. art. 328 imposing upon the surety the duty to notify the clerk of court of a change in his address.
Our inquiries into service or attempted service on the defendant and service on the sureties are hampered by the absence of an adequate record in this case. We do not have before us any transcript of proceedings in court on October 18, 1976, when the district attorney moved for bond forfeiture. Consequently, we cannot determine whether the judge considered as "proper evidence" anything beyond the returns on the subpoena before decreeing forfeiture of the bond. On the present limited record before us, we are inclined to conclude that considering R.S. 15:85 A(1), the motion to rescind the bond forfeiture should have been granted. However, we decline to so decide where the record is so incomplete, especially where evidence was not presented at the hearing on the motion to rescind.[4]
For these reasons, we determine that fairness to both the state and relator would better be served by upsetting the judgment of bond forfeiture and remanding this case for a full evidentiary hearing, whereat the trial court can properly resolve whether the requirements of R.S. 15:85 A(1) were met.

Decree
Accordingly, the judgment of bond forfeiture is set aside and the case remanded to the trial court.
JUDGMENT SET ASIDE; CASE REMANDED.
DIXON, C. J., dissents with reasons.
*878 WATSON, J., agrees with the result, but would not remand; therefore, he concurs in part and dissents in part.
DIXON, Chief Justice (dissenting).
I respectfully dissent, and would reverse on the record before us.
NOTES
[1] While the bond indicates that the property is owned by both Alexander Ash and Hilda Mills, we presume that it is owned only by Alexander Ash, for he alone filed the motion to set aside the bond forfeiture and the application in this Court.
[2] The minute entries for scheduled court appearances after October, 1976, are as follows:

Sept. 19, 1977-Pre-trial unavailing. Trial set for Sept. 23, 1977.
Sept. 23, 1977-Trial continued by court due to trial of another case. Set for status hearing on Oct. 6, 1977.
Oct. 6, 1977-Status hearing continued until Oct. 7, 1977. Defendant remanded to Parish Prison.
Oct. 7, 1977-Status hearing continued until Oct. 11, 1977. Defendant remanded to Parish Prison.
Oct. 11, 1977-Counsel for defendant failed to appear. Status hearing continued until Oct. 12, 1977. Defendant remanded to Parish Prison.
Oct. 12, 1977-Trial set for Oct. 26, 1977. Defendant remanded to Parish Prison.
Oct. 26, 1977-State nolle prosequied charge against defendant. Defendant discharged.
[3] In brief relator vigorously protests the truth of the fact that on October 11, 1976, one "Mrs. Hogan" resided at 1532 Gen. Ogden Street.
[4] While the record in its present posture is silent in this regard, counsel in brief contends that the judge would not hear evidence when the motion to rescind was taken up.