563 So.2d 267 (1990)
Charles R. CRAMER, Jr. and Neva Gage Cramer
v.
ASSOCIATION LIFE INSURANCE COMPANY, INC.
No. CW 89 0057.
Court of Appeal of Louisiana, First Circuit.
March 15, 1990.
*268 Allen M. Posey, Jr., Baton Rouge, for plaintiffs.
Christine Lipsey, Baton Rouge, for defendant.
Before EDWARDS, CARTER, LANIER, LeBLANC and FOIL, JJ.
CARTER, Judge.
This is a suit in contract to recover health insurance benefits.

FACTS
On September 24, 1986, plaintiffs, Charles and Neva Cramer, Jr., filed suit against defendant, Association Life Insurance Company, Inc. (ALIC), claiming benefits due under a health insurance policy purchased by Mr. Cramer's employer, Advertising By Computer, Inc. (ABC). In their petition, the Cramers alleged the following facts, in pertinent part:
2.
On or about July of 1985, ADVERTISING BY COMPUTER, INC., (herein after sometimes referred to as "Advertising"), a Louisiana domestic corporation, made an application for health and medical insurance benefits with Defendant, Association Life Insurance Company, Inc.
3.
The group insurance application by Advertising was approved by Defendant effective August 1, 1985. The assigned group number of that policy is 11709 and the unit number is 9425.
4.
Plaintiff, Charles R. Cramer, Jr., as an employee of Advertising, together with his wife, Neva Gage Cramer (Plaintiff) and minor daughter, Noel Cramer, were covered under the health and medical insurance benefits of defendant's group policy.
5.
After the effective date of August 1, 1985, Plaintiffs' minor daughter, Noel Cramer, became very ill and was treated first at Earl K. Long Memorial Hospital in Baton Rouge, Louisiana and was later transferred to Texas Children's Hospital, Houston, Texas, for treatment.
6.
On September 14, 1985 Noel was diagnosed as suffering from severe combined immune deficiency.
7.
On September 24, 1985 Noel first received treatment for the severe combined immune deficiency, undergoing bone marrow transplantation.

*269 8.
On November 16, 1985, Noel passed away as a result of this severe combined immune deficiency.
. . . .
12.
From September through December, 1985, Plaintiffs submitted copies of all the [medical] bills ... [incurred by Noel], with requests that Defendant pay those medical expenses.
13.
Despite this amicable demand Defendant has failed and/or refused to pay any of the foregoing medical expenses.
In addition to their claim for unpaid benefits, the Cramers alleged that ALIC was arbitrary and capricious in its failure to pay their claim, thereby entitling them to recover a penalty of 100% of the principal amount sued on and reasonable attorney's fees, pursuant to LSA-R.S. 22:657. ALIC, in its original answer, denied any obligation to the Cramers. ALIC filed an amended and supplemental answer pleading that the Cramers do not have a cause of action for penalties and mandatory attorney's fees under LSA-R.S. 22:657 because such claims are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.A. § 1001, et seq. (ERISA).
On December 15, 1988, ALIC filed a peremptory exception raising the objection of no cause of action, or, alternatively, a motion for partial summary judgment claiming that the Cramers' claim for statutory penalties under LSA-R.S. 22:657 was preempted by ERISA. ALIC also filed a motion in limine requesting that the trial court deny the Cramers' demand for a jury trial because the case is governed by ERISA and the federal common law interpreting ERISA, which precludes a trial by jury. ALIC further moved for an in limine order limiting the evidence admissible at trial to that evidence which was before ALIC at the time its final claim decision was rendered, as provided for by ERISA.
The Cramers filed a cross motion for partial summary judgment, opposing ALIC's exception and motion for summary judgment, and requested an order of the court declaring that ERISA is inapplicable to the case.
The trial court ruled that ERISA was inapplicable to this case and rendered judgment, which overruled ALIC's exception, denied ALIC's motion for summary judgment and motions in limine, and granted the Cramers' motion for summary judgment. ALIC sought supervisory writs. This court issued a writ of certiorari to review the trial court's ruling on the following issues:
A. Does the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.A. §§ 1001, et seq., apply to the case at bar, thus requiring the application of ERISA's civil enforcement provisions contained in 29 U.S.C.A. § 1132 and thereby preempting and displacing the plaintiffs' state law claims for breach of contract and penalties and mandatory attorneys' fees under La.R.S. 22:657?
B. If ERISA applies to the case at bar, are the plaintiffs precluded from having a jury trial?
C. If ERISA applies to the case at bar, shouldn't the evidence at trial be limited to that before ALIC at the time of its final claims decision, thus precluding a de novo trial court review, and requiring application of an arbitrary and capricious standard of review to the claims decision made by ALIC?

APPLICABILITY OF ERISA
ALIC contends that ERISA applies to the health insurance policy purchased by ABC, thus requiring the application of ERISA's civil enforcement provisions contained in 29 U.S.C.A. § 1132 and, thereby, preempting the Cramers' state law claims for breach of contract and statutory penalties under LSA-R.S. 22:657.
To determine whether an insurance plan is governed by ERISA, the following analysis set forth in Donovan v. Dillingham, *270 688 F.2d 1367 (11th Cir.1982), should be followed:
I.
Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans. Broadly stated, ERISA established minimum standards for vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government and making disclosures to participants. See generally H.R.Rep. No. 93-533, 93d Cong. 2d Sess., reprinted in [1974] U.S. Code Cong. & Ad. News 4639.
With a few specific exceptions ..., Title I of ERISA applies to any "employee benefit plan" if it is established or maintained by any employer or employee organization engaged in commerce or in any industry or activity affecting commerce, or by both an employer and an employee organization. ERISA § 4(a), 29 U.S.C. § 1003(a). "Employee benefit plan" or "plan" means an "employee welfare benefit plan" or an "employee pension benefit plan" or a plan which is both a welfare plan and a pension plan. ERISA § 3(3), 29 U.S.C. § 1002(3).....
II.
ERISA § 3(1), 29 U.S.C. § 1002(1), defines "employee welfare benefit plan" or "welfare plan" as
any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in § 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).4
By definition, then, a welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.
A.
Prerequisites (3), (4) and (5) are either self-explanatory or defined by statute. A plan, fund, or program must be established or maintained "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise," health, accident, disability, death, or unemployment or vacation benefits or apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits.5
The gist of ERISA's definitions of employer,6 employee organization,7 participant,8 and beneficiary9 is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. Thus, plans, funds, or programs under which no union members, employees or former employees participate are not employee welfare benefit plans under Title I of ERISA. See 29 C.F.R. 2510.3-3(b),(c).....
B.
Not so well defined are the first two prerequisites: "plan, fund, or program" *271 and "established or maintained." Commentators and courts define "plan, fund, or program" by synonymarrangement, scheme, unitary scheme, program of action, method of putting into effect an intention or proposal, designbut do not specify the prerequisites of a "plan, fund, or program." At a minimum, however, a "plan, fund, or program" under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.
"Established or maintained" appears twice in the definition of an employee welfare benefit plan: first, an employer or employee organization or both must establish or maintain a plan, fund, or program, and, second, the plan, fund, or program must be established or maintained for specified purposes. In many instances a plan is established or maintained, or both, in writing. It is obvious that a system of providing benefits pursuant to a written instrument that satisfies ERISA §§ 102 and 402, 29 U.S.C. §§ 1022 and 1102, would constitute a "plan, fund or program."
ERISA does not, however, require a formal, written plan. ERISA's coverage provision reaches "any employee benefit plan if it is established or maintained" by an employer or an employee organization, or both, who are engaged in any activities or industry affecting commerce. ERISA § 4(a), 29 U.S.C. § 1003(a) (emphasis added). There is no requirement of a formal, written plan in either ERISA's coverage section, ERISA § 4(a), 29 U.S.C. § 1003(a), or its definitions section, ERISA § 3(1), 29 U.S.C. § 1002(1). Once it is determined that ERISA covers a plan, the Act's fiduciary and reporting provisions do require the plan to be established pursuant to a written instrument, ERISA §§ 102 and 402, 29 U.S.C. §§ 1022 and 1102; but clearly these are only the responsibilities of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage under the Act. Furthermore, because the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan, see ERISA § 2, 29 U.S.C. § 1001, it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards. Accord, Dependahl v. Falstaff Brewing Corp., 491 F.Supp. 1188, 1195 (E.D.Mo.1980), aff'd 653 F.2d 1208 (8th Cir.1981).
. . . .
A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become realitye.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program existsbut it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative.
In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund, or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or programe.g., an insurance company's procedure for processing claims, cf. 29 C.F.R. § 2520.102-5 (qualified health maintenance organization)but no single act in itself necessarily constitutes the establishment of the plan, fund, or program. For example, the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple policies covering a class of employees *272 offers substantial evidence that a plan, fund, or program has been established.11
C.
In summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.
4 The ERISA definition refers to benefits in § 302(c) of the Labor Management Relations Act, 1947 (codified at 29 U.S.C. § 186(c)). The Secretary in regulations says § 302, 29 U.S.C. § 186(c), duplicates to a large extent the benefits enumerated in ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A), except that § 302, 29 U.S.C. § 186(c), adds holiday and severance benefits. 29 C.F.R. § 2510.3-1(a)(3).
5 A plan, fund, or program furnishing both benefits listed in ERISA § 3(1), 29 U.S.C. § 1002(1) or § 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c), and benefits not listed in those sections, is subject to ERISA to the extent the plan, fund, or program has as its purpose the providing of the enumerated benefits.
6 The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity. ERISA § 3(5), 29 U.S.C. § 1002(5).
7 The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan. ERISA § 3(4), 29 U.S.C. § 1002(4).
8 The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. ERISA § 3(7), 29 U.S.C. § 1002(7). The term "employee" means any individual employed by an employer. ERISA § 3(6), 29 U.S.C. § 1002(6).
9 The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. ERISA § 3(8), 29 U.S.C. § 1002(8).
. . . .
11 Department of Labor regulations recognize that an employer may be involved in a plan, fund, or program without establishing or maintaining it. See 29 C.F.R. § 2510.3-1(j). According to the regulation the term "employee welfare benefit plan" does not include group insurance if the sole functions of the employer are, without endorsing the program, to permit an insurer to publicize a program to employees, to collect premiums through payroll deductions, and to remit the premiums to the insurer, and the employer does not contribute premiums to the insurer or make a profit from the program. See also Hamberlin v. VIP Insurance Trust, 434 F.Supp. 1196 (D.Ariz.1977) (policies sold directly to individual employees; employers had no voice in management and contributed no funds).
[688 F.2d at 1370-1373]
The record shows that Mr. Cramer's employer, ABC, through it president, Charles Cramer, Sr., made an application for group life, health, and medical insurance with ALIC. The group insurance application by ABC was approved by ALIC and became effective on August 1, 1985. Charles Cramer, Jr., an employee of ABC, together with his wife and minor daughter were covered under the group policy, as were other employees of ABC, their spouses, and their dependents. According to ABC's application, ABC contributed 50% of the cost of the employee benefits.
Under the factors set forth in Donovan, we find that ABC established an employee benefit plan for the purpose of purchasing insurance. The extended benefits were provided to the employees of ABC, their spouses, and their dependents. Fifty percent *273 of the insurance premiums were paid by ABC, and ABC, not the individual employees, maintained the plan.
Accordingly, we find that the ABC plan is an employee welfare benefit plan within the contemplation of ERISA and that the trial court erred in finding to the contrary. However, the inquiry does not end here.

PREEMPTION OF LSA-R.S. 22:657 AND THE STATE CAUSE OF ACTION BY ERISA
Having determined that ERISA is applicable to the instant case, we must determine whether the preemption provision of ERISA, 29 U.S.C. § 1144, precludes application of LSA-R.S. 22:657, the state law upon which the Cramers rely for relief.
The provisions of ERISA relating to preemption include the preemption clause in § 1144(a), the saving clause in § 1144(b)(2)(A), and the deemer clause in § 1144(b)(2)(B), which set forth the framework for determining whether any state law is preempted by ERISA, and provide as follows:
Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.... (Emphasis added) 29 U.S.C. § 1144(a).
Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
29 U.S.C. § 1144(b)(2)(A).
Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
29 U.S.C. § 1144(b)(2)(B).
Generally, ERISA preempts all state laws insofar as they relate to any employee benefit plan and saves from preemption any state law which regulates insurance. Moreover, a state law which regulates insurance cannot deem an employee benefit plan to be an insurance company for the purposes of regulation.
The jurisprudence interpreting "the business of insurance" as used in the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., (the federal statute which gave the states the power to regulate the business of insurance) has identified three relevant criteria for determining whether a statutory provision falls within the saving clause and is not preempted: first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. Union Labor Life Insurance Company v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982). See also Group Life & Health Insurance Company v. Royal Drug Company, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).
In enacting the McCarran-Ferguson Act, Congress was concerned with the type of state regulation that focuses on the contract of insurance. The relationship between the insurer and the insured, the type of policy which could be issued, its reliability, its interpretation, and its enforcement were the core of the "business of insurance." The focus of the term "business of insurance" was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance." Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 568-569, 21 L.Ed.2d 668 (1969). See generally Metropolitan Life Insurance Company v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
*274 In the instant case, the Cramers seek relief under LSA-R.S. 22:657, which provides, in pertinent part, as follows:
A. All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
Analyzing this provision in light of the McCarran-Ferguson test, we find that the statute satisfies all three criteria and is saved from preemption. First, the statute has the effect of transferring or spreading policyholder risks in that the provisions of LSA-R.S. 22:657 are incorporated by law into each policy of accident and health insurance and is available to all said policyholders. The risks of an insurer being arbitrary and capricious are spread among all policyholders and the benefits are available to all policyholders. Second, the practice of enforcing the payment of properly submitted claims within a reasonable period is an integral part of the policy relationship between the insurer and insured. The policy relationship between a health and accident insurer and its insured is based upon the insurer's obligation to pay, in a timely fashion, all properly submitted claims for covered medical expenses in exchange for the insured's prompt payment of all insurance premiums. Further, LSA-R.S. 22:657 appears in Title 22 of the Louisiana Revised Statutes and is part of Louisiana's Insurance Code. The stated legislative purpose of the Insurance Code was to "regulate insurers and the insurance business." See Acts 1958, No. 125, which reenacted and amended the Insurance Code, LSA-R.S. 22:1 et seq. Third, the practice of permitting recovery of penalties and attorney's fees pursuant to LSA-R.S. 22:657 is limited to entities within the insurance industry in that the statutory penalties provided by LSA-R.S. 22:657 are not available in any other contract case. Clearly, LSA-R.S. 22:657 regulates the "business of insurance" and is precisely the type of state law which ERISA's saving clause intended to save from preemption.
We recognize that there are three federal district court decisions in the State of Louisiana holding that LSA-R.S. 22:657 A is preempted by ERISA. See Taylor v. Blue Cross/Blue Shield of New York, 684 F.Supp. 1352 (E.D.La.1988); Sublett v. Premier Bancorp Self Funded Medical Plan, 683 F.Supp. 153 (M.D. La.1988); Rasmussen v. Metropolitan Life Insurance Company, 675 F.Supp. 1497 (W.D. La.1987). However, all of these decisions were rendered by the federal district courts prior to the Louisiana Supreme Court decision in Soniat v. Travelers Insurance Company, 538 So.2d 210 (La.1989). In Soniat, the Louisiana Supreme Court considered the issue of preemption in interpreting an insurance provision dealing with cancellation for nonpayment of premiums. In finding that the cause of action under LSA-R.S. 22:213 B(7) was not preempted by ERISA, the Court stated:
In the present case, the Soniats sought to apply a provision of the Louisiana Insurance Code in order to recover benefits allegedly due under the group plan. La.R.S. 22:213 B(7) is part of a body of statutory law which does not just have an impact on the insurance industry, but is specifically directed to that industry. It therefore is clearly a state law which regulates insurance. Moreover, the remedies sought in this case, unlike the common law causes of action asserted in *275 Pilot Life, [Insurance Company v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)], are not available in every other Louisiana contract case.
The stated legislative purpose of the Insurance Code was to "regulate insurers and the insurance business". See Acts 1958, No. 125, which reenacted and amended the Insurance Code, La.R.S. 22:1 et seq. The statute at issue thus regulates the business of insurance. This is precisely the type of state law which ERISA's saving clause intended to save from pre-emption. Of further significance are the facts that the state law at issue does not conflict with the substantive provisions of ERISA and that the application of La.R.S. 22:213 B(7) does not create a conflict with ERISA's civil enforcement scheme. (Footnotes omitted)
[538 So.2d at 214-215]
Further, although the court in Soniat did not address whether LSA-R.S. 22:657 was preempted by ERISA because it set aside the award of attorney's fees on other grounds, the general tenor of the opinion supports the position that ERISA does not preempt LSA-R.S. 22:657. In expressly holding that the Insurance Code regulates the business of insurance, the Louisiana Supreme Court in Soniat apparently disagreed with the federal district court cases holding that the insurance code provision (LSA-R.S. 22:657) is not a law regulating the business of insurance within the meaning of ERISA's saving clause.
ERISA was enacted by Congress to insure that employees covered under employee benefit plans received the benefits to which they are entitled. If the penalty provisions provided by state statute (LSA-R.S. 22:657) are preempted, there is little to prevent a defendant insurer from arbitrarily denying claims, undermining ERISA's original goal to protect employees from abusive plans, and the saving clause of ERISA, saving from preemption all state statutes regulating the business of insurance, is meaningless.
Therefore, we find that the plaintiffs have a cause of action to recover health insurance benefits and any available punitive or compensatory damages, specifically those provided in LSA-R.S. 22:657. To hold otherwise would violate the most fundamental of all substantial policies of ERISA, viz. to protect the interest of the employee.

JURY TRIAL
Plaintiffs' petition states a cause of action for recovery of benefits under both ERISA and provisions of Louisiana's Insurance Code. Plaintiffs are entitled to a jury trial of those issues pertaining to benefits under the Louisiana Insurance Code, but are not entitled to a trial by jury of all other issues governed by ERISA. See LSA-C.C.P. arts. 1731, 1732, 1736. Cf. Lavergne v. Western Company of North America, Inc., 371 So.2d 807 (La.1979);[1]Dean v. Terrebonne Parish Police Jury, 510 So.2d 82 (La.App. 1st Cir.1987); Hebert v. Diamond M. Company, 367 So.2d 1210 (La.App. 1st Cir.1978), amended and affirmed, 385 So.2d 410 (La.App. 1st Cir. 1980).
Therefore, as in the case of suits against the State of Louisiana and other defendants who have the right to jury trial, the trial court will be required to conduct a bifurcated trial with the judge making all determinations as to ERISA questions and the jury determining the issues not preempted by ERISA, namely penalties and attorney's fees under LSA-R.S. 22:657. Cf. Dean v. Terrebonne Parish Police Jury, supra.

BURDEN OF PROOF IN EVIDENTIARY MATTERS
ALIC contends that it is a fiduciary under the plan governed by ERISA and, as *276 such, the appropriate standard of judicial review is the arbitrary and capricious standard. We disagree. In the instant case, ALIC certainly could not be considered an impartial decision-maker and clearly would have a conflict of interest. It would be ludicrous to give the defendant insurance company quasi-judicial authority to decide whether to perform under its own contract.
Therefore, although the arbitrary and capricious standard of review may be appropriate where the issue is whether a trustee has correctly balanced valid competing interests among present and future beneficiaries of the plan or in matters of true expertise such as investment decisions, it is clearly inappropriate for the issues presented in the case sub judice.[2]
The trial court was correct in denying ALIC's motion in limine that the only evidence that can be considered was that which was before ALIC at the time ALIC rendered its final claims decision. The bifurcated trial should proceed in accordance with the procedural laws and rules of evidence available in other state court proceedings.

CONCLUSION
Therefore, for the above and foregoing reasons, the writ is denied in part and made peremptory in part; the judgment of the trial court is affirmed insofar as it overruled defendant's exception of no cause of action and denied ALIC's motion for summary judgment on the issue of plaintiffs' claim for penalties and attorney's fees under LSA-R.S. 22:657.
Further, the judgment of the trial court is affirmed insofar as it granted plaintiffs' motion for summary judgment decreeing as a matter of law plaintiffs' claim for penalties and attorney's fee is not preempted by ERISA and that plaintiffs are entitled to a jury trial on those issues with the burden of proof and evidentiary laws in accordance with the procedural laws of the State of Louisiana. Insofar as the judgment of the trial court on plaintiffs' motion for summary judgment held that other provisions, except those set forth above, are governed by ERISA, the granting of the motion for summary judgment is reversed.

WRIT DENIED IN PART AND MADE PEREMPTORY IN PART.
EDWARDS, J., concurs. I will admit confusion as to what is and what is not a "plan" within the meaning of ERISA. If the mere purchase of group medical insurance is a plan, with the resulting bureaucratic ramifications, then 1990 has been superseded by 1984. I concur with the result in this opinion because I believe it conforms with the law of this state and is, certainly, preferable to the opposite result.
FOIL, J., concurs. I would affirm the trial judge's decision.
LANIER, J., concurs in part and dissents in part and assigns reasons.
LeBLANC, J., concurs in part and dissents in part for reasons assigned by LANIER, J.
LANIER and LeBLANC, JJ., concurring in part and dissenting in part.

APPLICABILITY OF ERISA
We agree with the holding of the lead opinion that "the ABC plan is an employee welfare benefit plan within the contemplation of ERISA and that the trial court erred in finding to the contrary."

PREEMPTION OF LA.R.S. 22:657 AND THE LOUISIANA CONTRACT CAUSES OF ACTION BY ERISA
ALIC argues that the Cramers' state law cause of action for breach of contract and their cause of action for statutory penalties under La.R.S. 22:657 are preempted by ERISA. Under Louisiana law, the cause of action for statutory penalties under La.R.S. 22:657 is separate and distinct from the cause of action for breach of the insurance *277 contract. Cantrelle Fence and Supply Company, Inc. v. Allstate Insurance Company, 515 So.2d 1074 (La.1987). The lead opinion holds that "the plaintiffs have a cause of action under state law to recover health insurance benefits and any available punitive or compensatory damages, specifically those provided in LSA-R.S. 22:657, notwithstanding that there is concurrent jurisdiction with federal district courts over ERISA regulated plans."
The lead opinion is in error in holding that ERISA applies to the ABC plan but that ERISA does not preempt "the plaintiffs... cause of action under state law to recover health insurance benefits." 29 U.S.C.A. § 1144(a). If ERISA is applicable, it applies to control the Cramers' cause of action for benefits under the plan, and the state law cause of action therefor is preempted; ERISA's civil remedy is exclusive. Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).
The lead opinion also erroneously holds that the cause of action for statutory penalties under La.R.S. 22:657 has not been preempted. The lead opinion recognizes that three federal district courts in Louisiana have held that La.R.S. 22:657 is preempted by ERISA. Taylor v. Blue Cross/Blue Shield of New York, 684 F.Supp. 1352 (E.D.La.1988); Sublett v. Premier Bancorp Self Funded Medical Plan, 683 F.Supp. 153 (M.D.La.1988); Rasmussen v. Metropolitan Life Ins. Co., 675 F.Supp. 1497 (W.D.La.1987). When interpreting a federal statute, state courts must look to the latest expression of the federal courts to determine its meaning. Morris v. Transworld Drilling Company, 365 So.2d 46 (La.App. 3rd Cir.1978); Jefferson Manufacturing Company v. Bayou Shoppe, 210 So.2d 912 (La.App. 2nd Cir.1968). See also Leyser v. Chicago, Rock Island & Pacific Railroad Company, 77 So.2d 87 (La.App. 1st Cir.1954); Morris Lake & Son v. Strickland, 55 So.2d 51 (La.App. 1st Cir. 1951). The lead opinion has declined to recognize that Louisiana's Third Circuit Court of Appeal has held that La.R.S. 22:657 is preempted by ERISA. In Smith v. Guardian Life Insurance Company, 546 So.2d 320, 322 (La.App. 3rd Cir.1989) appears the following:
In Pilot Life, the United States Supreme Court made it crystal clear that the civil enforcement provisions of ERISA as contained in § 502(a) were the exclusive vehicle for actions by ERISA participants and beneficiaries; and that various state causes of action which fall within the scope of and/or conflict with § 502(a) are pre-empted. We find La. R.S. 22:657(A) provides a remedy both within the scope of and in conflict with § 502(a) and thus is pre-empted by ERISA.
We are aware of the Louisiana Supreme Court's decision in Soniat v. Travelers Insurance Company, et al, 538 So.2d 210 (La.1989), but find Soniat inapplicable because in that case the court found that the state law at issue did not conflict with the substantive provisions of ERISA.
The Congress of the United States has enacted ERISA. If ERISA is applicable to this case, we, as judges, are obligated to apply it. La. Const. of 1974, art. X, § 30; La.R.S. 42:161. Further, as a state court, we must look to the latest expressions of the federal courts in determining the meaning of ERISA because it is a federal statute. The federal district courts in Louisiana have held ERISA is applicable in this type of case. The Louisiana Court of Appeal for the Third Circuit agrees. We find this authority persuasive.

RIGHT TO JURY TRIAL
No right to a trial by jury exists under ERISA on an action to recover benefits, or to clarify or enforce rights under an employee welfare benefit plan. Howard v. Parisian, Inc., 807 F.2d 1560 (11th Cir. 1987), and the cases cited therein; Calamia v. Spivey, 632 F.2d 1235 (5th Cir.1980). Because we believe the Cramers' state law claims are preempted by ERISA we would hold that the Cramers are not entitled to a trial by jury.

STANDARD OF REVIEW
The Cramers are entitled to a trial de novo because ALIC's denial of coverage is *278 not based on an exercise of discretion. Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Schultz v. Metropolitan Life Insurance Company, 872 F.2d 676 (5th Cir.1989).
A trial de novo in a judicial proceeding means a trial anew or from the beginning. Scott v. Moore, 214 La. 1090, 39 So.2d 741 (1949). The court tries the case as in a court of original jurisdiction. State v. Bickham, 208 La. 1026, 24 So.2d 65 (1945). At a trial de novo, the whole case is open for decision. Town of Sulphur v. Stanley, 207 La. 1075, 22 So.2d 655 (1945); City of Minden v. Harris, 196 La. 1021, 200 So. 449 (1941). At a trial de novo the whole case is retried as if no prior trial whatever had been had. Pardue v. Stephens, 558 So.2d 1149 (La.App. 1st Cir.1989); Black's Law Dictionary 1349 (5th ed. 1979).
ALIC's assignment of error on this issue is without merit.
NOTES
[1] LSA-C.C.P. art. 1732(6) has recently been amended to preclude a jury trial in an admiralty or general maritime claim under federal law that is brought in state court under a federal "savings to suitor" clause if the plaintiff has designated that suit as an admiralty or general maritime claim. See Bruce Heinhuis, et al v. Venture Associates, Inc. of Louisiana, et al, 558 So.2d 1244 (La.App. 1st Cir.1990).
[2] See Bass v. Retirement Plan of Conoco, Inc., 676 F.Supp. 735 (W.D.La.1988). See also Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134 (3rd Cir.1987). Cf. also Gilliam v. Plan Administrator, Retirement Plan of International Paper Company For Union Represented Employees (Group A), 506 So.2d 1305 (La.App. 2nd Cir.1987); Morein v. Reading and Bates Drilling Company, Inc., 469 So.2d 389 (La.App. 3rd Cir.1985).